**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**Nashville Division**

| | |
|---|---|
| Victor Ashe, Phil Lawson, and the League of Women Voters of Tennessee,<br><br>Plaintiffs,<br><br>v.<br><br>Tre Hargett, in his official capacity as Tennessee Secretary of State; Mark Goins, in his official capacity as Tennessee Coordinator of Elections; and Jonathan Skrmetti, in his official capacity as Tennessee Attorney General,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. _____ |

Plaintiffs, by and through their attorneys, bring this Complaint against the above-named Defendants, and state the following in support thereof:

## INTRODUCTION

1.       Plaintiffs Victor Ashe, Phil Lawson, and the League of Women Voters of Tennessee bring this action to prohibit Defendants Tennessee Secretary of State Tre Hargett, Tennessee Coordinator of Elections Mark Goins, and Tennessee Attorney General Jonathan Skrmetti from enforcing Tennessee Code Annotated Sections 2-7-115(b) and (c) ("Sections 115(b) and 115(c)").

2.       Sections 115(b) and (c) are criminal laws through which the Tennessee legislature purports to deter so-called crossover voting, wherein a voter who supports a particular political party casts a ballot in the primary election of a different political party. But these laws go far beyond deterring crossover voting and are unconstitutional because they threaten voters, including primarily those who have no intent to crossover vote, with felony convictions based on nebulous standards that have no definition under state law and instead are defined by private political parties.

1

3.      Specifically, Section 115(b) requires that, to vote in a party's primary election, a person must be a "bona fide member of and affiliated with" that party or "declare allegiance" to it, or else face criminal prosecution. Section 115(c), enacted only months ago, requires that prominent notices be posted at all polling places to warn voters that they will be subject to prosecution if they are not a "bona fide member of or affiliated with that political party," or do not "declare allegiance to that party[.]"

4.      Tennessee law provides **no** definition of how a voter becomes a "bona fide member of," "affiliated with" and/or "allegian[t] to" a political party. As a result, Sections 115(b) and (c) are unconstitutional on at least two grounds.

5.      Section 115(b) is unconstitutionally vague because it fails to provide voters with fair notice of what conduct it proscribes and provide standardless discretion, delegating to political parties and prosecuting officials the determination of who has broken the law by voting in a primary.

6.      Sections 115(b) and (c) also—through threats of prosecution based on nebulous and unknowable standards—violate the First Amendment's overbreadth doctrine, as they will deter a far greater range of protected voting conduct than would be needed to protect against a phantom threat of malicious crossover voting.

7.      These statutory provisions leave Plaintiffs and thousands of other Tennesseans unable to determine whether voting in a primary will subject them to prosecution and jail time. As a result, these provisions will deter a potentially enormous number of voters from exercising their fundamental right to vote.

8.      Plaintiffs seek relief from this Court to preserve the fundamental right to vote, and by extension protect our system of representative government.

2

## JURISDICTION AND VENUE

9.     This action arises under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

10.     This Court has subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343.

11.     This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the Defendants reside in this district and a substantial part of the events giving rise to the claims occurred in this district.

13.     This Court has personal jurisdiction over Defendants Secretary Tre Hargett, Coordinator of Elections Mark Goins, and Attorney General Jonathan Skrmetti because they are Tennessee domiciliaries, with their principal offices in Nashville, Tennessee, and their affiliations with the State of Tennessee are so continuous and systematic as to render them at home in this State.

14.     An actual and justiciable controversy exists between Plaintiffs and Defendants.

## THE PARTIES

15.     Plaintiff Victor Ashe is a resident of and registered voter in Knox County, Tennessee. He has voted in federal, state, and local elections, including in primary elections, in the past and intends to continue to do so in the future. Mr. Ashe is a lifelong Republican voter; he has served as a Republican Tennessee State Representative and State Senator, the Mayor of Knoxville, Tennessee, and Ambassador to Poland; and he ran as the Republican nominee for United States Senate in 1984. Mr. Ashe currently writes a weekly op-ed column for The Knoxville News-

3

Sentinel in which he regularly criticizes former President Trump and other Tennessee Republicans, such as Representative Tim Burchett, whom he publicly chastised recently for his vote to remove then-Speaker of the House Kevin McCarthy. Mr. Ashe also regularly and forcefully criticizes Republicans who refused to certify the results of the 2020 election and who have not condemned the actions of January 6, 2021. As a result, Mr. Ashe reasonably fears that the people in control of today's Tennessee Republican Party may not consider him a bona fide member affiliated with the party and could seek to prosecute him if he votes in the next primary election.

16.     Plaintiff Phil Lawson is a resident of and registered voter in Knox County, Tennessee. Mr. Lawson is a successful real estate developer with a focus on affordable housing and a civic leader. He established the nonprofit Legacy Housing Foundation as a vehicle for giving back to affordable housing residents; has served on the boards of the Knoxville Americana Music Foundation, Knoxville Habitat for Humanity, Wesley House Community Center, WDVX Radio, the Beck Cultural Exchange Center, and the Historic Tennessee Theatre Foundation; He is a significant donor to the University of Tennessee; and provides substantial economic support to civil causes through a foundation he established, The Lawson Family Foundation. Mr. Lawson has voted in federal, state, and local elections, including in primary elections, in the past and intends to continue to do so in the future. He identifies as a Democrat and is one the largest donors to the Tennessee Democratic Party, but he has voted for Republican and Democratic candidates in general elections and has made financial contributions to both Republican and Democratic candidates. Mr. Lawson's support of Republicans means he may not meet the Democratic Party's definition of a "bona fide" member. As a result, Mr. Lawson reasonably fears that the people in

4

control of today's Tennessee Democratic Party may not consider him a bona fide member affiliated with the party and could prosecute him if he votes in the next primary election.[1]

17.     Plaintiff League of Women Voters of Tennessee ("LWVTN" or "the League") is a nonprofit, nonpartisan, membership-based, grassroots, political organization whose mission is to empower voters and defend democracy. LWVTN seeks to promote civic engagement through informed and active participation in government. It accomplishes this mission in part by helping Tennessee citizens register to vote, educating voters about the issues that impact them, and encouraging voters to be active participants in democracy through engaging with elected officials and their policy decisions. In 2022 over 84,000 Tennesseans used LWVTN's VOTE411.org to get reliable voter information.

18.     LWVTN is the Tennessee affiliate of the League of Women Voters of the United States and has over 1,000 members statewide, spread out amongst various local Leagues across Tennessee. LWVTN has a diverse membership along racial, ethnic, socioeconomic, religious, and political lines. As a nonpartisan organization that does not support candidates or parties, LWVTN does not inquire about members' political affiliations or how members vote; nevertheless, LWVTN has members who self-identify as Democrats, other members who self-identify as Republicans, and others who identify as independent voters, all of whom may be subject to prosecution given the vague terms of the statute. Sections 115(b) and 115(c) are likely to prevent some League members from voting. Further, given the League's core mission and activities to

---

[1] While it may seem absurd that a political party would declare that a major contributor is not a bona fide member, that is exactly what the Republican Party did when it removed Baxter Lee from the Fifth Congressional District primary ballot in 2022. Mr. Lee had given nearly $100,000 to Republican candidates. *See* Georgiana Vines, "Candidate who was kicked off GOP ballot is from notable Knoxville family," Knoxville News Sentinel Apr. 26, 2022, available at https://www.knoxnews.com/story/news/columnists/georgiana-vines/2022/04/25/baxter-lee-kicked-off-gop-ballot-has-knoxville-ties-georgiana-vines/7413476001/.

5

educate and assist voters, the statute prevents LWVTN from fulfilling its primary function of providing voter information because it does not know how to inform its members and the general public accurately and effectively on voting issues related to the upcoming primaries without subjecting them to potential prosecution and/or subjecting LWVTN to an impossible reporting standard for promulgating "erroneous" information about permissible voting conduct.[2] Additionally, LWVTN will need to budget approximately $3000 to adequately respond to the voter confusion, intimidation, and uncertainty created by these laws ahead of the 2024 primary election. This is money that the League would otherwise use on voter registration and get-out-the-vote efforts.

19. Defendant Tre Hargett is the Secretary of State of Tennessee. As such, he oversees the State's election process. Under Tennessee law, he is charged with the administration of elections in Tennessee. Defendant Hargett is sued in his official capacity only.

20. Defendant Mark Goins is the Tennessee Coordinator of Elections. In this capacity, he has the express duty to "investigate or have investigated by local authorities the administration of the election laws and report violations to the district attorney general or grand jury for prosecution . . ." *See* Tenn. Code Ann. § 2-11-202(a)(5)(A)(i). Defendant Goins is sued in his official capacity only.

21. Defendant Jonathan Skrmetti is the Attorney General for the State of Tennessee. Under Tennessee law, he is empowered to request that the Coordinator of Elections conduct

---

[2] *See, e.g.*, Tenn. Code Ann. § 2-2-142 (h) ("Any person or organization who provides or publishes erroneous or incorrect information regarding the qualifications to vote, the requirements to register to vote, whether an individual voter is currently registered to vote or eligible to register to vote, voter registration deadlines, or polling dates, times, and locations shall, upon discovery, immediately notify the appropriate county election commission and the coordinator of elections.").

investigations into, and report violation of, election laws. *See* Tenn. Code Ann. § 2-11-202(a)(5)(C)(i). Defendant Skrmetti is sued in his official capacity only.

## FACTUAL ALLEGATIONS

### Modern Primary Elections in Tennessee

22.     Primary elections are an increasingly fundamental part of the political process. For a registered voter to participate effectively in the selection of candidates for a general election in Tennessee, the registered voter must vote in a political party's primary election.

23.     The most formidable general election candidates, and the subsequent winners of political elections in Tennessee, are almost always candidates from the dominant political parties in the state: the Republican Party and the Democratic Party.

24.     Voting in a political party's primary is essential for a registered voter to have a voice in determining the ultimate candidate for general election and the elected officials who will hold office.

25.     In Tennessee, primary voting is often determinative of general election outcomes. The current partisan balance in most of the 95 counties in Tennessee makes selection as a party's candidate a virtual guarantee of victory in the subsequent general election.

26.     While Tennesseans must register to vote as a general matter, they do not and cannot register as members of any party. In other words, a Tennessee voter cannot be a "registered Republican" or a "registered Democrat." When the state holds primary elections, a would-be voter who otherwise is eligible to vote must select at the polling place which party's ballot (i.e., Democratic or Republican) they intend to fill out. The voter may not fill out a ballot for more than one party in a given primary. Once a voter has made their selection and deposited their ballot, the voter's choice of party ballot is marked and maintained as public record. Because there are no

formal party voter rolls, voters may—and many often do—switch to vote in a different party's primary from one election to the next.

27.    For instance, historically and today, some Tennesseans consider themselves Republicans for national issues and Democrats on state issues. Thus, a given voter may have chosen a Democratic ballot in Tennessee's state judicial primary and supported the Democratic nominee in the general election, and then chosen a Republican ballot in the gubernatorial and congressional primary and supported the Republican nominees in the general.

**Sections 115(b) and 115(c) Purportedly Intend to Criminalize Voting in Primary Elections Only When "Cross-Over Voting" Takes Place in Primary Elections**

28.    Sections 115(b) and (c) are criminal laws through which the Tennessee legislature purports to deter voting by supporters of one political party in the primary elections of other political parties.

29.    Section 115(b), enacted in 1972, states "a registered voter is entitled to vote in a primary election for offices for which the voter is qualified to vote at the polling place where the voter is registered if":

> (1)    The voter is a bona fide member of and affiliated with the political party in whose primary the voter seeks to vote; or
>
> (2)    At the time the voter seeks to vote, the voter declares allegiance to the political party in whose primary the voter seeks to vote and states that the voter intends to affiliate with that party.

30.    Violation of Section 115(b) is punishable under Tennessee Code Annotated §§ 2-19-102 and 2-19-107.

31.    Tennessee Code Annotated Section 2-19-102 reads:

> A person commits a Class C misdemeanor if such person knowingly does any act prohibited by this title, or if such person knowingly fails to do any act which such person is required to do by this title, or if such person

8

knowingly does any act with the intent that another shall do an act prohibited by this title.

32.     Tennessee Code Annotated Section 2-19-207 reads:

(a)     A person commits a Class D felony who:

(1)     Intentionally and knowing that such person is not entitled to, registers or votes in any manner or attempts to register or vote in any manner where or when such person is not entitled to under this title, including voting more than once in the same election; or

(2)     Votes in the primary elections of more than one (1) political party in an election.

(b)     When any person is convicted of a violation of subdivision (a)(1) or (a)(2), in addition to any other punishment that may be imposed for the offense, the court shall impose a fine of one thousand dollars ($1,000). The additional fine shall be paid to the clerk of the court imposing sentence, who shall transfer it to the state treasurer, who shall deposit the fine in the reward pool fund, created by § 40-8-105.

33.     While Section 115(b) states that a primary voter must be a "bona fide" member or "affiliated with" the party in whose primary they vote, there is nothing in the statute that dictates how or when such membership may be changed, nor whether such membership must be consistent across all levels of elections, let alone anything in the statute that defines what "bona fide" means.

34.     In May 2023, in connection with a growing movement of state politicians to deter crossover primary voters, the Legislature enacted Section 115(c).

35.     Section 115(c) provides that on primary election voting days the officer of elections at each polling place must post a sign that is a minimum of 8 ½ inches by 11 inches with a yellow background in bolded, black text contain the following language:

**It's the law! Please read…**

**It is a violation of Tennessee Code Annotated, Section 2-7-115(b), and punishable as a crime under Tennessee Code Annotated, Section 2-19-102 or**

9

**Section 2-19-207, if a person votes in a political party's primary without being a bona fide member of or affiliated with that political party, or to declare allegiance to that party without the intent to affiliate with that party.**

Tenn. Code Ann. § 2-7-115(c) (emphasis in original).

36.     Section 115(c) requires the officer of elections at each polling place to post the sign in a prominent, highly visible location within the polling place.

37.     Section 115(c) is silent as to what information is provided, if any, and how that information is provided, to voters who vote absentee and therefore do not vote at a physical voting place.

### Threats of Prosecution

38.     Tennessee recently has indicated that it is ready and willing to enforce Section 115(b) and its criminal penalties.

39.     In April 2022, Defendant Hargett gave a speech in which he emphasized his intent to begin enforcing Section 115 (b). As he put it at the time, "[p]eople need to understand when you go vote in a primary, you are supposed to vote in the primary in which you are a member of the party. . . . The DA could actually prosecute that if people are willingly going in and voting in the other party."[3]

40.     Two months later, in June 2022, Republican candidates challenged the outcomes of two close elections in Williamson County based on alleged "crossover voting" by specific Democratic voters. While the Tennessee Republican Party Executive Committee voted to uphold the election results, its members expressed a desire to preclude Democrats from voting in Republican primaries, the candidates identified the specific voters who they alleged should not

---

[3] *Tennessee Secretary of State*, *Tre Hargett, speaks at Jackson Rotary Club luncheon*, WNBJ, Apr. 21, 2022, https://www.wnbjtv.com/single-post/tennessee-secretary-of-state-tre-hargett-speaks-at-jackson-rotary-club-luncheon.

have been permitted to vote in the election, and similar "discord" "over bonafides and crossover voting" arose in connection with at least two other primaries, including in a challenge to a mayoral Republican primary in Hamilton County and in a dispute regarding whether a particular candidate for U.S. Congress could appear on the Republican primary ballot.[4]

41.     When discussing the issue on the Tennessee House floor, Chairman Rudd claimed that "there are two people currently under indictment . . . for organizing crossing over into the other party's primary . . . ." H.B. 0828, 113th Gen. Assemb. 27th Sess. (Tenn. 2023), https://tnga.granicus.com/player/clip/28402?view_id=703&redirect=true&h=3d7777e0d1fe502e 02ad334c0d4ea8ee.

42.     And during debate on enacting Section 115(c) as part of HB0828 and SB0978, the bill's sponsor confirmed that it is "up for conjecture" whether someone could be prosecuted if they cast a vote in a Republican primary after having historically voted for Democrats in prior elections. *Id.*

### Sections 115(b) and 115(c) Are Void For Vagueness and Violate The Due Process Clause of the Fourteenth Amendment

43.     Statutes are void for vagueness when they (1) "fail[] to give ordinary people fair notice" of what conduct is prohibited, or (2) are "so standardless that [they] invite[] arbitrary enforcement" from authorities who lack direction. *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (noting that the second element of the doctrine is most significant); *Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010) ("The void-for-vagueness doctrine not only ensures that laws provide 'fair warning' of proscribed conduct, but it also protects citizens against the impermissible delegation of basic policy matters

---

[4] J. Holly McCall, *Tennessee Republican Party Upholds Williamson County Primary Results*, Tennessee Outlook, Jun. 10, 2022, https://tennesseelookout.com/briefs/tennessee-republican-party-upholds-williamson-county-primary-results/.

'for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.'" (citation omitted)); *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999).

44. Vague statutes that chill the freedom to fully participate in the political process are unconstitutional. *See, e.g.*, *Tenn. State Conf. of N.A.A.C.P. v. Hargett*, 420 F. Supp. 3d 683, 698-99 (M.D. Tenn. 2019) (finding First Amendment violated when the "threat of penalties [wa]s likely to have a chilling effect on" voting-related activities).

45. The Supreme Court has emphasized that our Constitution demands a "more stringent vagueness test" when a law "threatens to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). Thus, the standard of heighted scrutiny applies where, as here, statutes threaten criminal penalties that result in the impingement of the fundamental right to vote. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) ("The right to vote is a fundamental right, 'preservative of all rights.'" (internal citations omitted)); *Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673, 687 (M.D. Tenn.), *aff'd on other grounds,* 978 F.3d 378 (6th Cir. 2020) ("The Court well understands that the constitutional right to vote is 'fundamental.'").

46. Section 115(b) is void for vagueness because it imposes criminal punishment and fails to provide fair notice to citizens of what conduct is prohibited and also because it is so standardless it invites arbitrary enforcement. *Johnson*, 576 U.S. at 595.

47. Section 115(b) imposes a criminal penalty without providing fair or adequate notice such that registered voters might understand if they are "a bona fide member of and affiliated with" the political party in the primary in which voters seek to vote.

12

48.     Section 115(b) also fails to provide fair or adequate notice to registered voters regarding what it means to "declare allegiance" to the political party in the primary in which voters seek to vote or what it means to "intend[] to affiliate with" that political party.

49.     Tennessee law provides no definition of any of these terms to guide registered voters and voter-informing groups like LWVTN seeking to comply with the law.

50.     The absence of such definitions means that Section 115(b) fails to provide fair or adequate notice to citizens of what conduct is prohibited.

51.     Moreover, Section 115(b) not only fails to define what is prohibited, but also it impermissibly delegates the definition of unlawful conduct to private entities, the political parties.

52.     Even if such delegation were permissible, the political parties have no functional definition, either. The Republican Party's bylaws *do not define* a bona fide member for the purpose of voting in a primary *at all*. The Democratic Party's Bylaws at least offer a definition, but it, too, is vague and entirely subjective.

53.     Therefore, the terms fall below the constitutional threshold for specificity and render the statute too vague to provide anything close to adequate notice to Plaintiffs Ashe and Lawson, Plaintiff LWVTN and its members, and other similarly situated voters.

54.     Section 115(b) is void for vagueness for an additional reason: it fails to provide clear guidelines to govern enforcement, allowing for impermissibly broad discretion and discrimination by the party, the prosecutor, or both.

55.     Because neither voters nor poll workers have any way of confirming voters' "bona fides" when the voters walk into a polling place, enforcement of Section 115(b) would need to happen after a voter casts a vote.

13

56.     This post hoc nature of enforcement gives political parties, poll workers, or theoretically any citizen the ability to swear out criminal complaints against voters after an election, even though the voters had no chance to conform to the law before voting.

57.     It also gives free license to district attorneys to prosecute their political opponents.

58.     A standard that gives officials so much leeway is unconstitutional.

59.     Such a standard is even more unconstitutional in the fact of Section 115(c) that uses the same impossible vague terms to warn voters against exercising their right to vote.

60.     Section 115(b) thus fails to meet the stringent vagueness test applicable when a law threatens criminal sanctions, especially when the law also threatens to inhibit the exercise of constitutionally protected rights such as the right to vote.

61.     Section 115(b) and 115(c) violate the Fourteenth Amendment of the United States Constitution and is unenforceable.

**Section 115b and 115(c) Violate the First Amendment's Overbreadth Doctrine**

62.     The First Amendment to the United States Constitution provides that "Congress shall make no law abridging the freedom of speech, . . . ; or the right of the people peaceably to assemble, and to petition the Government . . . ."

63.     The speech and petition clauses of the First Amendment have long been held to "safeguard[] an individual's right to participate in the public debate through political expression and political association." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 203 (2014).

64.     The First Amendment's "overbreadth doctrine" permits "an individual whose own speech or conduct may be prohibited" to "challenge a statute on its face 'because it threatens [the free speech rights of] others.'" *Airport Comm'rs v. Jews for Jesus*, 482 U.S. 569, 574 (1987).

65.     The doctrine is especially apt where a statute threatens criminal sanctions, because "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of

14

vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

66.     Facial challenges to overly broad statutes are allowed for the benefit of society to prevent the statute from chilling the First Amendment rights of parties not before the court. *Sec'y of State of Md. v. Munson Co., Inc.*, 467 U.S. 947, 958 (1984).

67.     Sections 115(b) and 115(c) threaten voters with criminal sanctions.

68.     Section 115(c) combines a prominently threatening sign with the impossibly vague law in Section 115(b) to penalize or deter a wide range of constitutionally protected voting conduct.

69.     The statute deters direct voting behavior of voters who have never voted before and do not know if they have the required bona fides or allegiances to the political party for which they wish to vote.

70.     The statute deters direct voting behavior of voters who may wish to switch parties.

71.     The statute also deters expressive conduct that accompanies voting.

72.     The statute deters Plaintiff LWVTN from fulfilling its mission of communicating election-related information to voters because it does not know how to inform its members and the general public accurately and effectively on voting issues related to the upcoming primaries.

73.     Tennessee does not have a sensible basis for distinguishing between conduct that is prohibited under Section 115(b) from that which is permissible.

74.     There is no conceivable government interest that justifies the criminalization of voting conduct based on the unwritten whims of poll workers, state party leadership, or local prosecutors.

75.     Even if crossover voting were actually becoming problematic in a way that harmed the State, the statutes' vagueness makes it impossible for a court to competently apply and enforce its prohibitions in a way that would address that problem.

## COUNT ONE

**Tennessee Code Annotated Sections 2-7-115(b) and 2-7-115(c) Violate the Fourteenth Amendment Guarantee of the Right to Due Process of Law**
**42 U.S.C. § 1983**

76.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.     The Defendants are governmental actors or employees acting under the color of State law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution.

78.     The Due Process of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides no person shall be deprived of life, liberty or property without the due process of law, nor shall any State deprive any person of life, liberty or property, without due process of law.

79.     A statute is void under the Due Process Clause when it fails to give a person of ordinary intelligence fair notice that his or her contemplated conduct is forbidden by the statute or is so indefinite that it encourages arbitrary and erratic arrests and convictions.

80.     The Due Process Clause provides even further protection when the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights. The Due Process Clause also provides heightened protection when criminal penalties may be imposed based upon the statute.

81.     The statutes at issue here advise that an individual violates the law and is subject to criminal prosecution if he or she votes in a primary without being a "bona fide member" of the applicable party or without maintaining sufficient allegiance to the party. But Tennessee law

16

provides no definitions for those operative terms and leaves Plaintiffs and Tennessee voters to guess as to whether they maintain sufficient affiliation with either political party to vote without risking prosecution.

82.     Plaintiffs, including LWVTN's members and those it advises, cannot merely declare allegiance to either political party at the ballot box, as the statutes further criminally proscribe declarations of allegiance unless the same are made with "intent to affiliate." There is no definition of what constitutes a sufficient "intent to affiliate" and the time frame in which such intention is operable: today, tomorrow, next year, or indefinitely.

83.     By leaving the operative terms undefined and fundamentally unclear, the statute encourages arbitrary prosecution. Anyone who is deemed to be an undesirable voter in either primary may be threatened, prosecuted, or arrested for attempting to vote without maintaining sufficient allegiance to the party, as state officials may ascribe definitions to the terms "bona fide" and "affiliated with" that vary from voter to voter.

84.     As a result of the uncertainty induced by the statutes, Plaintiffs Ashe and Lawson fear prosecution if they exercise their fundamental constitutional right to vote in either political party primary. Plaintiff LWVTN likewise fears advising its members and those who seek its guidance in a way that could lead them to face prosecution or which would otherwise involve promulgating erroneous information in contravention of state law.

85.     Because the free exercise of constitutional rights is threatened by the vagueness of the statutes, and because criminal punishment is permitted under the statutory scheme, heightened protection is afforded to Plaintiffs by the Due Process Clause.

86.     The statutes fail to provide the specificity demanded by the Due Process Clause, and they are unenforceable. Plaintiffs Ashe and Lawson, as persons of ordinary intelligence, are

unable to determine whether their degree of affiliation with either political party makes it safe for them to vote without risking criminal prosecution. Plaintiff LWVTN is unable to determine how to advise voters and is thus limited in its ability to perform its mission.

87.     Therefore, the Court should declare Tennessee Code Annotated Sections 2-7-115(b) and 2-7-115(c) unconstitutional and enjoin the enforcement of the same.

## COUNT TWO

### Tennessee Code Annotated Sections 2-7-115(b) and (c) Violate the First Amendment Right to Freedom of Speech 42 U.S.C. 1983

88.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.     The Defendants are governmental actors or employees acting under the color of State law for purposes of 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.

90.     The First Amendment of the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, protects the Plaintiffs' fundamental right to participate in the political process, including the fundamental right to vote.

91.     The First Amendment, coupled with the Due Process Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, protects the Plaintiffs' fundamental right to vote without a state law depriving them of life, liberty, or property without due process of law.

92.     By combining a prominently threatening sign with an impossibly vague law, Section 115 penalizes or deters an extraordinary range of protected voting conduct.

93.     In addition to the direct voting behavior that Section 115 deters, it will also deter or penalize a host of expressive conduct that accompanies voting.

18

94.     Plaintiffs' inability to determine whether or not they, their members, or those they advise are legally qualified to vote in a Tennessee political party primary prevents Plaintiffs, and similarly situated voters, from participating in the political process and chills their freedom of political speech.

95.     Tennessee Code Annotated Sections 2-7-115(b) and (c) violate Plaintiffs' constitutional rights granted by the First and Fourteenth Amendments to engage in the political process and to exercise their fundamental right to vote.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

(i)     Declare that Tennessee Code Annotated Sections 2-7-115(b) and (c) are (1) void for vagueness under the Fourteenth Amendment, and (2) overbroad and in violation of the First Amendment's free speech clause.

(ii)    Preliminarily and permanently enjoin Defendants and their employees, agents, and successors in office from enforcing Tennessee Code Annotated Sections 2-7-115(b) and (c);

(iii)   Award Plaintiffs their reasonable attorneys' fees and costs, including pursuant to 42 U.S.C. § 1988;

(iv)    Grant such other relief as the Court deems just and proper.

19

Dated: November 29, 2023.

Respectfully submitted,


/s/ *R. Culver Schmid*
R. Culver Schmid, BPR No. 011128
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
265 Brookview Centre Way, Suite 600
Knoxville, TN 37919
Tel.: (865) 971-5103
cschmid@bakerdonelson.com

Gary Shockley, BPR No. 010104
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1600 West End Avenue, Suite 2000
Nashville, TN 37203
Tel.: (615) 726-5600
gshockley@bakerdonelson.com

Eric G. Osborne, BPR No. 029719
Christopher C. Sabis, BPR No. 030032
William L. Harbison, BPR No. 007012
Frances W. Perkins, BPR No. 040534
Sherrard Roe Voigt & Harbison, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Tel.: (615) 742-4200
eosborne@srvhlaw.com
csabis@srvhlaw.com
bharbison@srvhlaw.com
fperkins@srvhlaw.com

*Counsel for Plaintiffs Victor Ashe and Phil Lawson*

John E. Haubenreich, BPR No. 029202
The Protect Democracy Project
2020 Pennsylvania Avenue NW, #163
Washington, DC 20006
Tel.: (202) 579-4582
john.haubenreich@protectdemocracy.org

Orion Danjuma (*pro hac vice* forthcoming)
The Protect Democracy Project
82 Nassau St. #601
New York, NY 10038
Tel.: (202) 579-4582
orion.danjuma@protectdemocracy.org

Collin P. Wedel (*pro hac vice* forthcoming)
Sidley Austin LLP
555 W. Fifth St., Suite 4000
Los Angeles, CA 90013
Tel.: (213) 896-6000
cwedel@sidley.com

Jillian Sheridan Stonecipher (*pro hac vice* forthcoming)
Rebecca B. Shafer (*pro hac vice* forthcoming)
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Tel.: (312) 853-7000
jstonecipher@sidley.com
rshafer@sidley.com

*Counsel for Plaintiff League of Women Voters of Tennessee*