IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

| | |
|---|---|
| Victor Ashe, Phil Lawson, and the League of Women Voters of Tennessee,<br><br>*Plaintiffs*,<br><br>v.<br><br>Tre Hargett, in his official capacity as Tennessee Secretary of State; Mark Goins, in his official capacity as Tennessee Coordinator of Elections; and Jonathan Skrmetti, in his official capacity as Tennessee Attorney General,<br><br>*Defendants*. | Case No. 3:23-cv-01256<br>Judge Eli J. Richardson<br>Magistrate Judge Alistair Newbern |

## DECLARATION OF DEBBY GOULD ON BEHALF OF THE LEAGUE OF WOMEN VOTERS OF TENNESSEE

Pursuant to 28 U.S.C. § 1746, I, Debby Gould, declare as follows:

1. I am over the age of 18, and I am competent to make this declaration. I provide this declaration based upon my personal knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

2. The League of Women Voters of Tennessee ("LWVTN" or "the League") is a plaintiff in the above captioned case.

3. I am the president of LWVTN. In my capacity as president of LWVTN, I am familiar with the activities of LWVTN and receive frequent updates regarding the activities of each of Tennessee's local Leagues.

4. LWVTN is a nonprofit, nonpartisan, membership-based, grassroots, political organization whose mission is to empower voters and defend democracy. LWVTN is the Tennessee affiliate of the League of Women Voters of the United States ("LWVUS").

5. LWVTN has 1,000 members statewide spread out amongst ten local Leagues chapters in Tennessee as well as at-large members located across the state. The ten local League chapters are: Chattanooga, Hendersonville, Jefferson County, Knoxville-Knox County, Memphis-Shelby County, Murfreesboro/Rutherford County, Nashville, Northeast TN (serving Carter, Greene, Hancock, Hawkins, Johnson, Sullivan, Washington, and Unicoi Counties), Oak Ridge, and Williamson County. Each local League is a member of the state League, and every local League member is a member of the state League.

6. LWVTN neither supports nor opposes any political party or candidate. LWVTN does not inquire about members' political affiliations or how members vote; however, the League has many members who self-identify as Democrats, many others who self-identify as Republicans, and other who self-identify as Independents. LWVTN has a diverse membership along racial, ethnic, socioeconomic, religious, and political lines. Members share a commitment that voting is an essential component of a democracy and are active voters themselves. Many members usually vote in primary elections.

7. LWVTN seeks to promote civic engagement through informed and active participation in government. It accomplishes this mission in part by helping Tennessee citizens register to vote, educating voters about the issues that impact them, and empowering voters to be active participants in democracy by engaging with elected officials and their policy decisions. Additionally, LWVTN focuses on expanding opportunities for voter

participation and believes it is important that voters have a reasonable opportunity to elect candidates of their choice.

8. The core of our organization is to inform and engage voters. In pursuit of that goal, LWVTN and the local chapters prepare a range of easy-to-understand non-partisan materials that are accessible to the public. These resources are available in print formats in English, Spanish, Arabic, and Kurdish. Additionally, information is disseminated through social media, print media, radio, television spots, and public events.

9. During election seasons, LWVTN also sees an uptick in the number of requests by phone or by email from members of the public with specific questions regarding their own eligibility to vote or their access to a ballot.

10. Most of the League's work is made possible by volunteers. LWVTN volunteers invest significant energy and resources in outreach to high school students, naturalized citizens, and other individuals who might need guidance as first-time voters.

11. LWVTN provides VOTE411.org as a service to the public. A national initiative of the League of Women Voters Education Fund ("LWVEF"), VOTE411.org is designed to provide all voters with the information they need to successfully participate in every election (local, state, and federal) because the League believes that laws and policies should reflect the values of the community. It provides all the necessary dates and guidelines for voting in Tennessee. VOTE411.org also offers a Ballot Lookup Tool for voters to enter their addresses to find their local polling place and create a personalized voter guide to take with them on election day for in-person voting. 84,834 Tennesseans used VOTE411.org in 2022 to get reliable voter information.

12. Public Chapter 473, "An Act to amend Tennessee Code Annotated, Title 2, relative to polling places," now codified at Tennessee Code Annotated § 2-7-115(c) ("Section 115(c)"), changes the culture of the polling place in primary elections. In previous primaries, which are open, a poll worker would ask a voter which primary ballot was their preference. With the implementation of Section 115(c), this casual inquiry is replaced with a challenge to the voter. It requires that the elections officer post a sign in each polling place informing voters that it is illegal to vote in a party's primary without being a "bona fide member of or affiliated with that political party, or to declare allegiance to that party without the intent to affiliate with that party."

13. Although the law underlying the "bona fide" requirement is not new, the requirement to post a sign at each polling place is, and this change will have a grave impact on voters, elections, and the League.

14. In my experience as League president, the requirement that a sign must be posted at the polling place warning that a voter must be a "bona fide," "affiliated," or "allegian[t]" party member to legally vote in that party's primary election could intimidate and deter potential voters from participating for fear of prosecution.

15. The law itself is problematic and undemocratic. To my knowledge, this law, Tennessee Code Annotated § 2-7-115(b) ("Section 115(b)") has never been enforced publicly, and most voters are unaware of its requirements.

16. With the passage of Section 115(c), the Tennessee legislature and the Secretary of State are announcing their clear intent to begin enforcing Section 115(b) against voters.

17. Troublingly, Section 115 does not define what it means to be a "bona fide" member or "affiliated" with a party or what "to declare allegiance to that party" entails. Poll officers

are not allowed to provide any clarification about the meaning of these terms, thus eroding public confidence in the voting process.

18. There are LWVTN members who have self-identified as Independent voters, others who have previously voted in Democratic primaries and in Republican primary elections, as is the right of any voter in an open primary system. Other members have donated to members of both political parties. With the lack of a definition of what makes someone a "bona fide," "affiliated," or "allegian[t]" party member, there will be confusion for these members about whether they can vote in the primary election under the law.

19. In addition to causing confusion and intimidation for voters, Sections 115(b) and (c) also create an untenable scenario for LWVTN and its volunteers. The creditability of our organization as a knowledgeable and trusted source for voter information will be upended if this law is allowed to go into effect during the 2024 primary elections, since no information is available for LWVTN to guide voters in determining the meaning of "bona fide," "affiliated," or "allegian[t]" party membership. There is no way to accurately and effectively inform voters on issues related to the upcoming primaries without potentially subjecting them to enforcement of Section 115(b).

20. LWVTN will be forced to provide conflicting messages to the public: urging Tennesseans to vote in primary elections while at the same time cautioning them that they might be unwittingly committing a misdemeanor through an incorrect choice of a primary ballot.

21. Additionally, Tennessee Election Law Sec. 2-2-142(h) states that "any person or organization who provides or publishes erroneous or incorrect information regarding the qualifications to vote, the requirements to vote . . . shall, upon discovery, immediately notify the appropriate county election commission and the coordinator of elections."

Without guidance on the meaning of "bona fide," "affiliated," or "allegian[t]" party member, LWVTN will have no way to determine if it is providing erroneous information regarding the qualifications or requirements to vote. Thus, LWVTN may unintentionally fall out of compliance with this law.

22. In those unusual situations in which LWVTN does not have the answer to questions posed by a voter, we refer them to the Secretary of State's website, www.GoVoteTN.gov for answers. However, there is no information posted there regarding the definition for a "bona fide," "affiliated," or "allegian[t]" voter.

23. Sections 115(b) and (c) will prevent LWVTN from carrying out its mission of sharing voter information and encouraging Tennessee voters to participate in crucial primary elections to avoid unwittingly causing voters to engage in criminal misconduct or falling out of compliance with the abovementioned law.

24. With the enforcement of Sections 115(b) and (c), LWVTN has been forced to and will continue to be required to divert significant resources to educate the public about the law and its consequences before the 2024 primary election on March 5, 2024. This voter education will be even more difficult because of the unclear meaning of the requirements to vote in a party's primary.

25. Upon the passage and implementation of Section 115(c), for example, LWVTN began researching how to educate members and voters about the requirements of Section 115(b) because we were certain we would get calls and questions.

26. As LWVTN prepares our online voter guide, VOTE411.org in time for the presidential primary, we are uncertain what guidance to provide regarding Sections 115(b) and (c) since those provisions could impact the way that a voter accesses local primary elections in May

and August 2024. To address the uncertainty related to Sections 115(b) and (c), LWVTN is also drafting changes to our guidance for our volunteer poll watchers regarding challenges to a voter at the polls by either poll workers or by members of the public who doubt the voter's party affiliation. We are also conferring with other nonpartisan organizations that focus on first-time voters, such as groups registering college students, about best practices to address voter confusion.

27. LWVTN members often serve as poll workers on election day. In fact, LWVTN encourages its members and the public to serve as poll workers, especially given the shortages of poll workers we have experienced in recent years.

28. Poll workers in Tennessee are instructed to refrain from interpreting or explaining anything to voters beyond what is written in their instructions. I recently spoke with an LWVTN member who serves as a poll worker, and she expressed to me confusion and worry about how she would explain or respond to questions about the requirements of Section 115 or the language in the sign required by Section 115(c) to voters.

29. I anticipate LWVTN will need to budget approximately $3000 to adequately respond to the voter confusion, intimidation, and uncertainty created by these laws ahead of the 2024 primary election. This is money that the League would otherwise use on voter registration and get-out-the-vote efforts.

30. The current voter participation rate in Tennessee places it in the bottom ten percent of all states in the nation. Enforcement of Sections 115(b) and (c) is likely to decrease participation in the 2024 primaries even further, which is directly in opposition to the mission of LWVTN.

31. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of December, 2023.

_____
Debby Gould